Filed 7/23/24  In re Jordan Y. CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re JORDAN Y., a Person Coming Under the Juvenile Court Law. | B326570 |
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>JORDAN Y.,<br><br>        Defendant and Appellant. | (Los Angeles County Super. Ct. No. YJ40816) |

APPEAL from an order of the Superior Court of Los Angeles County, J. Christopher Smith, Judge.  Affirmed with directions.

Courtney M. Selan, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Steven D. Matthews, Supervising Deputy Attorney General, and Analee J. Brodie, Deputy Attorney General, for Plaintiff and Respondent.

_____

Jordan Y. appeals from the juvenile court's disposition order committing him to a secure youth treatment facility (SYTF) under Welfare and Institutions Code section 875[1] after he admitted to committing murder. As part of its order, the court set a baseline term of confinement of seven years (§ 875, subd. (b)(1)) and a maximum term of confinement of six years two months (§ 875, subd. (c)(1)). In his briefing on appeal, Jordan asserted the juvenile court erred in not applying his 394 days of precommitment credits to his baseline term. At oral argument, Jordan abandoned his arguments, and both parties agreed that the credits applied to his maximum term of six years two months. We affirm and direct the juvenile court to issue an amended SYTF commitment order.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *Underlying Offense and Wardship Petition*

In January 2022, Jordan was hitting his girlfriend, who was pregnant with Jordan's child, when a bystander tried to

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

2

intervene.  Jordan, who was 17 years old, shot and killed the bystander.[2]

The People filed a wardship petition under section 602,[3] alleging that Jordan committed murder (Pen. Code, § 187, subd. (a)), and battery on the parent of one's child (Pen. Code, § 273.5, subd. (a)).

### B.    *Admission and Disposition Hearing*

In February 2023, Jordan admitted he committed second degree murder.  On the People's motion, the court dismissed the battery count and a separate section 602 petition involving allegations of felony evasion, grand theft, and commercial burglary.

After taking the admission, the court declared Jordan a ward of the juvenile court and ordered his commitment to an SYTF under section 875, subdivision (a).  The court then set a baseline term of confinement of seven years under section 875, subdivision (b), and a maximum term of confinement of six years two months under section 875, subdivision (c).  Specifically, the court stated:  "The maximum period of confinement that could be

---

[2]    We draw these facts of the underlying incident from the probation officer's report.

[3]    Section 602, subdivision (a), states, "Except as provided in Section 707, any minor who is between 12 years of age and 17 years of age, inclusive, when he or she violates any law of this state or of the United States or any ordinance of any city or county of this state defining crime other than an ordinance establishing a curfew based solely on age, is within the jurisdiction of the juvenile court, which may adjudge the minor to be a ward of the court."

imposed pursuant to Welfare and Institution Code section 875(c) is based on his date of birth, is roughly six years, and two months. That would put him around the age of 25. Having considered the individual facts and circumstances of the case, the court orders the maximum period of confinement to be that six years, two months. The baseline level of confinement based on the most serious recent adjudicated offense, I have it as category one, which is seven years."

The court awarded Jordan 394 days of precommitment credits for time served but rejected his request to apply the credits against his baseline term. In declining to apply the precommitment credits against the baseline term, the court stated that it "will not be applying the 394 days credit towards [Jordan's] commitment to SYTF, but it will be applied towards [Jordan's] maximum confinement time."

After the hearing, the court issued a minute order that stated: "The Court sets the baseline term of confinement at 7 Years. [¶] The minor is given predisposition credits for 394 Days spent in custody which is to be applied to the maximum term of confinement. [¶] Minor may not be held in physical confinement for a period to exceed 6 YEARS, TWO MONTHS."[4]

---

[4] The court also issued an SYTF commitment order, in which it ordered a "maximum period of confinement" of "seven years" "[a]fter having considered the individual facts and circumstances of the case under section 731[, subdivision (c)]." The commitment order further reflects that the court exercised its discretion to modify the "maximum confinement period under section 731[, subdivision(c)]" because the seven-year term was less than the maximum period of imprisonment that could be imposed on an adult convicted of the same offense, i.e., 15 years to life.

4

Jordan timely appealed.

## DISCUSSION

A.  *Pre-SYTF Commitments and the Juvenile Justice Realignment*

Commitment to the Department of Juvenile Justice (DJJ) used to be "the state's most restrictive placement for its most severe juvenile offenders." (*In re Miguel C.* (2021) 69 Cal.App.5th 899, 902; see also *In re M.B.* (2024) 99 Cal.App.5th 435, 448 (*M.B.*).)

But in 2020, the Legislature began to realign the juvenile justice system by enacting laws that gradually shifted the DJJ's responsibility for youth offenders to the county level, and eventually closed the DJJ in June 2023. (Sen. Bill No. 823 (2019-2020 Reg. Sess.) (Stats. 2020, ch. 337, § 1); Sen. Bill No. 92 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 18, § 12); see also § 736.5.)

Until recently, section 731, subdivision (c), set forth the juvenile court's authority to set a maximum term of confinement for a ward committed to the Department of Juvenile Justice (DJJ). (§ 731, former subd. (c), now subd. (b)). As discussed below, however, the Legislature realigned the juvenile justice system by closing the DJJ and replacing it with SYTF commitments. Section 731 became inoperative once the DJJ was closed. (§ 731, subd. (c).) To account for these changes, the Judicial Council has approved form JV-733 for optional use when a court orders an SYTF commitment. Unlike the commitment order here, form JV-733 refers to section 875, subdivision (c), as the relevant statutory basis for a ward's maximum term of confinement.

The legislative action was based on evidence showing that "justice system-involved youth are more successful when they remain connected to their families and communities" and that "[j]ustice system-involved youth who remain in their communities have lower recidivism rates and are more prepared for their transition back into the community." (Stats. 2020, ch. 337, § 1(a).) Bearing this in mind, the juvenile justice realignment was meant to "ensure that justice-involved youth are closer to their families and communities and receive age-appropriate treatment." (Stats. 2020, ch. 337, § 1(b); see also Stats. 2020, ch. 337, § 1(e) [the Legislature intends for counties "to use evidence-based and promising practices and programs that improve the outcomes of youth and public safety, reduce the transfer of youth into the adult criminal justice system, ensure that dispositions are in the least restrictive appropriate environment, reduce and then eliminate racial and ethnic disparities, and reduce the use of confinement in the juvenile justice system by utilizing community-based responses and interventions"].)

### B. *SYTF Commitments Under Section 875*

#### 1. *Criteria for SYTF commitments*

As part of the juvenile justice realignment, Senate Bill No. 92 (2021-2022 Reg. Sess.) added section 875, and became effective on May 14, 2021. (Stats. 2021, ch. 18, § 12.) Section 875 allows for youth offenders who would have been committed to the DJJ to instead be committed to an SYTF. (See *In re Tony R.* (2023) 98 Cal.App.5th 395, 406.) Under section 875, subdivision (a), a minor under the jurisdiction of the juvenile

court may be committed to an SYTF if three criteria are met: "(1) The juvenile is adjudicated and found to be a ward of the court based on an offense listed in subdivision (b) of Section 707 that was committed when the juvenile was 14 years of age or older. [¶] (2) The adjudication described in paragraph (1) is the most recent offense for which the juvenile has been adjudicated. [¶] (3) The court has made a finding on the record that a less restrictive, alternative disposition for the ward is unsuitable. . . ."

## 2. *Terms of confinement for SYTF commitments*

For any SYTF commitment, the court must specify the maximum exposure term under section 726 and set two terms of confinement under section 875.

### a. *Maximum exposure term*

First, under section 726, subdivision (d)(1), any time a minor is removed from the physical custody of a parent or guardian through a section 602 petition, the court must specify in the disposition order that the minor "may not be held in physical confinement for a period in excess of the middle term of imprisonment which could be imposed upon an adult convicted of the offense or offenses which brought or continued the minor under the jurisdiction of the juvenile court." (See also § 726, subd. (d)(5) ["physical confinement" includes placement in an SYTF].) To differentiate it from the terms of confinement a court must set under section 875, we refer to the period of confinement under section 726 as the "maximum exposure term." (See *M.B.*, *supra*, 99 Cal.App.5th at p. 465; *In re Ernesto L.* (2022) 81 Cal.App.5th 31, 34, 39.)

7

b. *Maximum term of confinement*

Second, under section 875, subdivision (c), the court must set a "maximum term of confinement" based on "the facts and circumstances of the matter or matters that brought or continued the ward under the jurisdiction of the court and as deemed appropriate to achieve rehabilitation."[5] (§ 875, subd. (c)(1).) The maximum term shall represent "the longest term of confinement in an [SYTF] that the ward may serve," subject to certain limitations. (*Ibid.*) First, a ward cannot be held in an SYTF beyond 23 years of age, or two years from the date of the

---

[5] This language was added to section 875 under Assembly Bill No. 200, which became effective on June 30, 2022. (Stats. 2022, ch. 58, § 41.) Before this addition (which occurred before Jordan's commitment), section 875, former subdivision (c), provided: "In making its order of commitment, the court shall additionally set a maximum term of confinement for the ward in a secure youth treatment facility. The maximum term of confinement shall represent the longest term of confinement in a facility that the ward may serve subject to the following: [¶] (1) A ward committed to a secure youth treatment facility under this section shall not be held in secure confinement beyond 23 years of age, or two years from the date of the commitment, whichever occurs later. However, if the ward has been committed to a facility based on adjudication for an offense or offenses for which the ward, if convicted in adult criminal court, would face an aggregate sentence of seven or more years, the maximum period of confinement shall not exceed the ward attaining 25 years of age or two years from the date of the commitment, whichever occurs later. [¶] (2) The maximum period of confinement shall not exceed the middle term of imprisonment that can be imposed upon an adult convicted of the same offense or offenses."

commitment, whichever occurs later.  (§ 875, subd. (c)(1)(A).)
However, for "an offense or offenses for which the ward, if
convicted in adult criminal court, would face an aggregate
sentence of seven or more years," the ward cannot be held in an
SYTF beyond 25 years of age, or two years from the date of
commitment, whichever occurs later.  (*Ibid.*)  Second, the
maximum term cannot exceed the middle term of imprisonment
that could be imposed upon an adult convicted of the same
offense or offenses—that is, the maximum exposure term under
section 726.  (§ 875, subd. (c)(1)(B).)  In other words, the court has
discretion to set a maximum term of confinement that is lower
than the maximum exposure term in light of the "facts and
circumstances" of the case.  (§ 875, subd. (c)(1), (c)(1)(B); see also
*M.B.*, *supra*, 99 Cal.App.5th at pp. 445, 460, 467 ["The Attorney
General . . . agrees the juvenile court had discretion to set a
maximum term of confinement that is lower than the [maximum
exposure term."].)[6]  Finally, and central to this appeal,
section 875, subdivision (c)(1)(C), provides, "Precommitment
credits for time served must be applied against the maximum
term of confinement as set pursuant to this subdivision."[7]  As
noted, after considering the facts and circumstances of this case,

---

[6]     If the court sets a maximum term of confinement under
section 875 that is lower than the maximum exposure term under
section 726, the latter term is a "theoretical" maximum as
opposed to the "actual" maximum.  (See *In re Ernesto L.*, *supra*,
81 Cal.App.5th at pp. 34, 41 [recognizing same distinction in
statutory scheme used for DJJ commitments]; see also *M.B.*,
*supra*, 99 Cal.App.5th at pp. 465-466.)

[7]     This provision was added to section 875 by Assembly Bill
No. 200.  (Stats. 2022, ch. 58, § 41.)

the court set a maximum term for Jordan's confinement at six years two months.

c.     *Baseline term of confinement*

Third, under section 875, subdivision (b), the court also must set a "baseline term of confinement" based on "the most serious recent offense for which the ward has been adjudicated." (§ 875, subd. (b)(1).)  The baseline term, which represents "the time in custody necessary to meet the developmental and treatment needs of the ward and to prepare the ward for discharge to a period of probation supervision in the community," is subject to downward modification at progress review hearings throughout the ward's commitment.  (§ 875, subds. (b)(1) & (e)(1)(A).)  At the time of Jordan's commitment, the court was to set a baseline term using the "discharge consideration date guidelines" that the DJJ used before its closure, subject to discretionary deviations of plus or minus six months.  (§ 875, subd. (b)(1), citing Cal. Code Regs., tit. 9, §§ 30807-30813.)  As noted, the court here set a baseline term of seven years, which followed the DJJ guidelines' categorization of second degree murder as a "Category 1" offense.[8]  (Cal. Code Regs., tit. 9,

---

[8]     Under the DJJ guidelines in effect at the time, the following crimes were "Category 1" offenses with a guideline term of seven years:  first and second degree murder, kidnapping with death of victim or substantial injury, torture, and conspiracy to commit any of the preceding crimes.  (Cal. Code Regs., tit. 9, § 30807, subd. (a).)  After Jordan's commitment, and pursuant to statutory instruction, the Judicial Council approved offense-based classifications the juvenile court is to apply when setting a

10

§ 30807, subd. (a)(2).) While Jordan's initial baseline term was thus higher than his maximum term, his confinement in an SYTF was capped by the latter term pursuant to section 875, subdivision (c)(1).

### C. *Jordan's Precommitment Credits Applied to the Maximum Term*

Jordan does not dispute that he met the criteria for an SYTF commitment. (See § 875, subd. (a).) Nor does he challenge the baseline or maximum terms of confinement the juvenile court set. (§ 875, subds. (b) & (c).) Instead, in his briefing on appeal, Jordan challenges only the court's refusal to apply his 394 days of precommitment credits to his baseline term. He relies on section 875 and the decision in *In re Ernesto L.*, *supra*, 81 Cal.App.5th 31. He also contends the failure to apply the credits against his baseline term violated his equal protection rights.

At oral argument, however, Jordan abandoned these challenges, and both parties asserted that the 394 days of

---

baseline term of confinement. (See Cal. Rules of Court, rule 5.806(d); see also Welf. & Inst. Code, § 875, subds. (b)(1) & (h) [Judicial Council shall develop and adopt a matrix of offense-based classifications for determinations of baseline confinement terms].) These classifications became effective on July 1, 2023. (See Cal. Rules of Court, rule 5.806(d).) Under the new classifications, murder is a "Category A" offense with a baseline term range of four to seven years. (See *ibid.*)

11

precommitment credits applied to his maximum term of confinement of six years two months.[9]

Section 875, subdivision (c)(1)(C), unambiguously states that, for an SYTF commitment, "[p]recommitment credits for time served must be applied against the maximum term of confinement as set pursuant to this subdivision." Thus, Jordan's 394 days of precommitment credits apply to the maximum term of six years two months that the juvenile court set under section 875, subdivision (c).

---

[9]     We note the court in *M.B.*, *supra*, 99 Cal.App.5th at pages 464 to 470, addressed and rejected arguments similar to those in Jordan's briefing.

## DISPOSITION

The disposition order is affirmed.  The juvenile court shall issue an amended SYTF commitment order that reflects a maximum period of confinement of six years two months under section 875, subdivision (c), against which 394 days of precommitment credits for time served are to apply.  The court shall send a copy of the amended order to the Los Angeles County Probation Department, Juvenile Division, Secured Youth Treatment Facility.


RAPHAEL, J.*

We concur:


MARTINEZ, P. J.


SEGAL, J.

---

\* Judge of the San Bernardino County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.